UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 4:23-cv-01744 |
| Plaintiff, | ORDER |
| | [Resolving Docs 8, 11] |
| v. | |
| JOSEPH PEDALINE, ET AL., | |
| Defendants. | |

JAMES S. GWIN, UNITED STATES DISTRICT COURT JUDGE:

The United States sues Defendants Joseph Pedaline and YLP LLC (YLP) for alleged violations of the Fair Housing Act (FHA), 42 U.S.C. §§ 3601 *et seq*. The government alleges that from 2009 through at least 2020, Defendant Pedaline subjected female tenants of Youngstown residential properties to a pattern or practice of sexual harassment and discrimination. The government further alleges that because Defendant YLP owned the properties and employed Pedaline as its property manager for part of this time, YLP is liable under the FHA as well.

The Defendants separately move to dismiss the government's complaint for failure to state a claim, and as untimely filed under the controlling statute of limitations.

For the following reasons, the Court **DENIES** the Defendants' motions to dismiss.

Case No. 4:23-cv-01744
GWIN, J.

## I. BACKGROUND[1]

Defendant Joseph Pedaline lives in Youngstown, Ohio.[2] Defendant YLP, LLC is a Youngstown headquartered limited liability company (LLC).[3]

The government brings this action concerning Defendant Pedaline's behavior towards female tenants of at least a dozen Youngstown rental properties from "at least" 2009 through "at least" 2020.[4]

During this period, the Defendants "owned and/or managed" the relevant properties.[5] Defendant Pedaline was involved with the properties throughout this period, first as the properties' owner, and then as a manager employed by Defendant YLP.[6] Defendant YLP, which was incorporated on August 4, 2017, owned at least some of these properties after its incorporation.[7]

As YLP's property manager, Pedaline showed the properties to prospective tenants, executed leases, collected rent, dealt with maintenance requestes, communicated with tenants, and initiated eviction proceedings.[8] At the same time, however, Pedaline arguably subjected female property tenants to sexual discrimination and harassment. This conduct allegedly included making housing benefits contingent on performing sexual acts with Pedaline, unwanted sexual touching, comments, and advances, entering tenants' home without permission, and taking adverse housing actions against tenants who rejected him.[9]

---

[1] The Court takes as true all well-pleaded factual allegations when deciding Rule 12(b)(6) motions, and nothing in this factual background section should be construed as the Court's findings of fact.
[2] Doc. 1, ¶ 4.
[3] *Id.*, ¶ 5.
[4] *Id.*, ¶¶ 6, 7, 12.
[5] *Id.*, ¶ 7.
[6] *Id.*, ¶ 9, 11.
[7] *Id.*, ¶ 5.
[8] *Id.*, ¶ 10.
[9] *Id.*, ¶ 12.

Case No. 4:23-cv-01744
GWIN, J.

The complaint details four specific instances of Pedaline's harassing conduct, two of which took place before Defendant YLP's involvement in the properties.

First, in 2009 and 2010, Defendant Pedaline made sexual comments to a tenant, including suggesting that they could have sex in exchange for rent. As alleged, Pedaline also entered this tenant's unit without notice. After the tenant asked Pedaline to stop his conduct, the complaint says that Pedaline attempted to evict her.[10]

In 2012, the complaint alleges that Pedaline repeatedly propositioned a different tenant for sex while she was cleaning units to pay her rent. He also allegedly touched her without her permission and told her she could pay her rent with sex. Shortly after this, Pedaline evicted her.[11]

In 2018, after Defendant YLP became involved, the complaint alleges that Defendant Pedaline offered a female tenant to clean apartments in exchange for a rent reduction. When the tenant arrived to clean, Pedaline told her that she wouldn't have to pay her late rent if she had sex with him. The tenant refused and left. Defendant YLP subsequently tried to evict the tenant.[12]

And, in May 2020, Defendant Pedaline allegedly showed a female tenant a vacant apartment. While there, the complaint says he locked the door and touched her in a sexual manner. The tenant rejected Pedaline's behavior and left the apartment. The tenant then informed Defendant YLP about Pedaline's conduct; YLP did not take responsive action. The tenant moved out.[13]

---

[10] *Id.*, ¶ 16.
[11] *Id.*, ¶ 15.
[12] *Id.*, ¶ 13.
[13] *Id.*, ¶ 14.

- 3 -

Case No. 4:23-cv-01744
GWIN, J.

The government alleges that these events are examples of a pattern or practice of sexual harassment from at least 2009 through at least 2020 by Defendant Pedaline.[14] Part of Pedaline's conduct occurred while he was YLP's agent, allegedly making YLP liable.[15]

On September 6, 2023, the government filed its complaint against Defendants.[16]

The Defendants now move separately to dismiss the government's complaint against them for failure to state a claim upon which relief can be granted.[17]

## II. LEGAL STANDARD

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[18] Courts must "[a]ccept[] all allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor" when ruling on these motions.[19]

The United States is authorized to bring a claim under Section 3614(a) when there is reasonable cause to believe that (1) "any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights granted by [the FHA]" or (2) "any group of persons has been denied any of the rights granted by [the FHA] and such denial raises an issue of genuine public importance."[20] Conduct prohibited by the FHA includes denying dwellings or discriminating in the provision of dwellings because of sex,[21] or coercing or intimidating anyone as they exercise their FHA rights.[22]

---

[14] *Id.*, ¶ 17.
[15] *Id.*, ¶ 19.
[16] *Id.*
[17] Docs. 8, 11. The government filed a combined response, *see* Doc. 13, and the Defendants replied separately, *see* Docs. 15, 16.
[18] *Kanuszewski v. Mich. Dep't of Health & Human Servs.*, 927 F.3d 396, 412 (6th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted)).
[19] *In re: Fifth Third Early Access Cash Advance Litig.*, 925 F.3d 265, 276 (6th Cir. 2019) (citation omitted).
[20] 42 U.S.C. § 3614(a).
[21] 42 U.S.C. § 3604.
[22] 42 U.S.C. § 3617.

Case No. 4:23-cv-01744
GWIN, J.

### III.  ANALYSIS

The Defendants move separately to dismiss the claims against them for failure to state a claim upon which relief can be granted.[23]  Both Defendants also say that the complaint should be dismissed because the government brought the case outside of the relevant statute of limitations.[24]

#### A. Failure to State A Claim

##### 1. Defendant YLP

Defendant YLP moves to dismiss the complaint, with the argument that the government does not sufficiently allege either an agency relationship between YLP and Pedaline, direct liability for Pedaline's conduct, or a pattern or practice of discrimination for FHA liability.[25]  YLP's motion focuses on the allegations of YLP's relationship with Pedaline, which YLP says are vague, and separately focuses on the timing of that relationship.[26]  YLP says it only became involved with the properties at issue after its formation in 2017.[27]

Taking the facts in the light most favorable to the United States, the complaint sufficiently pleads allegations allowing inferences of vicarious liability, direct liability, and a pattern or practice of discrimination on Defendant YLP's behalf.

##### a. Vicarious Liability

The complaint plausibly alleges an agency relationship between Defendants Pedaline and YLP and plausibly alleges Defendant YLP's vicarious liability for Pedaline.

---

[23] Docs. 8, 11.
[24] Doc. 8, PageID #: 53; Doc. 11, PageID #: 88.
[25] Doc. 8, PageID #: 42-43.
[26] *Id.*, PageID #: 44-45.
[27] *Id.*, PageID #: 45.

Case No. 4:23-cv-01744
GWIN, J.

"[I]t is well established that the [FHA] provides for vicarious liability."[28] In determining whether vicarious liability exists, courts look to federal common law notions of agency relationships.[29]

Vicarious liability may stem from either an actual or apparent agency relationship. An actual agency relationship exists where a principal manifests to another that the other has authority to act on the principal's behalf and subject to the principal's control; and the agent consents to act on the principal's behalf and subject to the principal's control.[30] Apparent agency can be created by "conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him to so act on the principal's account."[31]

The complaint's descriptions of Pedaline's and YLP's conduct plausibly allege Pedaline's apparent authority on behalf of YLP. The complaint twice alleges specific instances when Pedaline acted on behalf of YLP in managing the properties.[32] For example, in 2018, Pedaline dealt with a tenant who contacted him about late rent.[33] And, in May 2020, Pedaline showed a vacant unit to a tenant, and when Pedaline acted inappropriately, the tenant reported Pedaline to YLP.[34] These facts support an inference that there was a relationship of authority and obligations between Pedaline and YLP for some time—enough to establish vicarious liability.

At the pleadings stage, the complaint must make more than a "sheer possibility that the defendant has acted unlawfully."[35] It has done so here.

---

[28] *Meyer v. Holley*, 537 U.S. 280, 285 (2003).
[29] *See, e.g., id.* at 286 (*citing* Restatement (Second) of Agency § 219(1) 1957); *Marr v. Rife*, 503 F.2d 735, 740 (6th Cir. 1974).
[30] *Marr*, 503 F.3d at 740.
[31] Restatement (Second) of Agency § 26.
[32] Doc. 1, ¶¶ 11, 19.
[33] *Id.*, ¶ 14.
[34] *Id.*, ¶ 13.
[35] *Iqbal*, 556 U.S. at 674.

Case No. 4:23-cv-01744
GWIN, J.

### b. Direct Liability

The complaint also plausibly alleges facts inferring that Defendant YLP is directly liable for Defendant Pedaline while YLP employed Pedaline as a property manager.

A person, including a corporation, is directly liable under the FHA for "failing to take prompt action to correct and end a discriminatory housing practice by that person's employee or agent, where the person knew or should have known of the discriminatory conduct."[36]

As discussed, the complaint alleges an agency relationship between Pedaline and YLP for at least part of Pedaline's involvement with the properties. The complaint also details that in May 2020, a tenant complained to YLP about Pedaline's harassing behavior and alleges that YLP took no action. This sufficiently alleges YLP's direct liability.

### c. Pattern or Practice of Discrimination

Defendant YLP says that it is not liable for the portion of Pedaline's conduct that occurred before it became involved in the properties.[37] YLP asserts that "[b]ecause YLP cannot be liable for all [of Pedaline's conduct], . . . it cannot be liable for some of it."[38]

However, Defendant YLP does not cite to any legal authority for this proposition, and as discussed, the complaint sufficiently alleges YLP's liability for at least some of Pedaline's behavior. Defendant YLP was incorporated in 2017 and alleges that it became involved with the relevant properties after that. The complaint alleges a pattern or practice of discrimination by Pedaline from at least 2009 through at least 2020. There is enough in the complaint to establish a pattern or practice of discrimination from these time periods.

---

[36] 24 C.F.R. § 100.7(a)(ii) (2003).
[37] Doc. 8, PageID #: 48-49..
[38] Doc. 16, PageID #: 135.

Case No. 4:23-cv-01744
GWIN, J.

At this stage, Defendant YLP cannot receive judgment merely because its and Pedaline's timeframes do not perfectly align.[39] Courts regularly consider the "broad remedial intent of Congress embodied in the [FHA]" when construing claims brought for continuing FHA violations based on alleged instances of misconduct outside of a limitations period.[40] It also strikes the Court as premature to confine the scope of Defendant YLP's liability before any discovery.

### 2. Defendant Pedaline

Defendant Pedaline argues that because he did not own or manage Defendant YLP, he is not liable for the 2018 or 2020 incidents of his alleged misconduct.[41] And, because the earlier alleged incidents of his misconduct are outside of the statute of limitations, the claim against him must be dismissed.[42]

However, just because Pedaline was not an owner or manager of Defendant YLP does not eliminate his own personal liability for allegedly sexually harassing tenants while working as a YLP manager. To establish a claim under 42 U.S.C. § 3617, the government must sufficiently allege that a person enjoyed a right guaranteed by the FHA, that the defendant's intentional conduct constituted coercion, intimidation, threat, or interference, and that there was a causal connection between the person's exercise of their rights and the defendant's conduct.[43] The 2018 and May 2020 incidents detailed in the complaint

---

[39] *See Montgomery County, Maryland v. Bank of Amer. Corp.*, 421 F. Supp. 3d 170, 180 n. 3 (D. Md. 2019) (*citing Nat'l Fair Hous. Alliance v. HHHunt Corp.*, 919 F. Supp. 2d 712, 715 n.1 (W.D. Va. 2013)) (noting that "parties [may] recover for earlier acts under the FHA that constitute part of an ongoing pattern or practice," even if those defendants are no longer involved).

[40] *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 381 (1982) (*citing Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 417 (1968)).

[41] Doc. 11, PageID #: 88. Recognizing that Defendant Pedaline appears *pro se*, the Court construes his motion liberally. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)); *see also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

[42] Doc. 11, PageID #: 88. Defendant Pedaline also asserts that the complaint does not sufficiently allege an agency relationship between him and Defendant YLP. As previously discussed, the Court finds that the complaint does so.

[43] *Hood v. Midwest Sav. Bank,* 95 F. App'x 768, 779 (6th Cir. 2004) (*citing* 42 U.S.C. § 3617).

Case No. 4:23-cv-01744
GWIN, J.

sufficiently allege that Pedaline's coercive and intimidating behavior directly interfered with tenants' right to discrimination-free housing under the FHA.

Defendant also misconstrues the nature of an FHA pattern-or-practice claim. The 2009 and 2010 incidents are *examples* of a singular pattern or practice that the government properly alleges to have begun in 2009. Where a plaintiff "challenges not just one incident of conduct violative of the [FHA], but an unlawful practice that continues into the limitations period, the complaint is timely filed when it is filed within [the applicable statute of limitations] of the last asserted occurrence of that practice."[44]

So, if the complaint was timely filed, the 2009 and 2010 incidents can be included in that pattern or practice claim. And as discussed below, the government sufficiently establishes that the complaint was timely filed within the statute of limitations for purposes of surviving motions to dismiss.

### B. Statute of Limitations

The Defendants both say that the complaint should be dismissed in its entirety because it was filed outside of the three-year statute of limitations for government-asserted FHA claims.[45] The Defendants argue that that because the last alleged incident of discriminatory conduct happened in May 2020, the September 2023 complaint is fatally untimely.[46]

As an initial matter, the government seeks injunctive relief, civil penalties, and monetary damages.[47] Government-brought pattern-or-practice claims for injunctive relief under 42 U.S.C. § 3614(a) have no statute of limitations, so the government's claim for

---

[44] *Havens*, 455 U.S. at 381.
[45] Doc. 8, PageID #: 53; Doc. 11, PageID #: 88. *See* 28 U.S.C. § 2415(b).
[46] Doc. 8, PageID #: 53; Doc. 11, PageID #: 88.
[47] Doc. 1, PageID #: 6-7.

Case No. 4:23-cv-01744
GWIN, J.

injunctive relief is timely brought.[48] And the United States is subject to a five-year statute of limitations for civil penalties under the FHA.[49] So, the Defendants' three-year statute of limitations argument applies only to the government's claim for monetary damages.

"[A] motion under Rule 12(b)(6), is generally an inappropriate vehicle for dismissing a claim based on the statute of limitations."[50] When a Rule 12(b)(6) motion is made on grounds of statute of limitations, then, the Court must decide whether "it is apparent from the face of the complaint that the limit for bringing the claim[s] has passed."[51] Generally, dismissal on limitations grounds is appropriate only "if the allegations in the complaint affirmatively show that the claim is time-barred."[52]

From the face of the complaint, it is not apparent that the government's claim for monetary damages is untimely.[53] The government correctly notes that the United States' right of action for 42 U.S.C. § 3614(a) pattern-or-practice claims accrues when the Attorney General could first reasonably have known of the material facts.[54]

However, nothing in the complaint allows the Court to ascertain when the Attorney General learned or had reason to know of the Defendants' alleged misconduct. The government makes no allegations of this kind. Absent these allegations, the Court cannot dismiss the government's monetary damages claim based on the statute of limitations at this

---

[48] *United States v. Harrison*, 188 F. Supp. 2d 77, 80 (D. Mass. 2002) (*citing United States v. Incorp. Village of Island Park*, 791 F. Supp. 354, 365 (E.D.N.Y. 1992)).
[49] *See* 28 U.S.C. § 2462; 42 U.S.C. § 3614(d)(1)(C).
[50] *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012).
[51] *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 520 (6th Cir. 2008) (alteration in original).
[52] *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 698 (6th Cir. 2022) (citation and internal quotation marks omitted).
[53] In its opposition to the Defendant's statute of limitations argument, the government references a purported 2023 tolling agreement between it and the parties and attaches it as an exhibit to its motion in opposition. *See* Doc. 13-1, PageID #: 115-16; Doc. 13-2. However, the tolling agreement is not attached to or mentioned in the complaint. *See* Doc. 1. Rather than convert the Defendants' motions to dismiss into motions for summary judgment, the Court excludes the tolling agreement from consideration at this time. *See* Fed. R. Civ. P. 12(d).
[54] *See* 28 U.S.C. § 2416(c).

- 10 -

Case No. 4:23-cv-01744
GWIN, J.

stage in the litigation.[55]  Because the "undisputed facts [do not] conclusively establish [the] affirmative defense" of the statute of limitations "as a matter of law," the Defendants' motion to dismiss is premature.[56]

## IV.    CONCLUSION

The government's complaint plausibly states a claim for violations of the FHA against Defendants Pedaline and YLP.  The complaint also does not appear to be untimely filed on its face.

For the foregoing reasons, the Court **DENIES** Defendant Pedaline's and Defendant YLP's motions to dismiss.

IT IS SO ORDERED.

Dated: February 21, 2024            *s/   James S. Gwin*
                                    JAMES S. GWIN
                                    UNITED STATES DISTRICT JUDGE

---

[55] *Bureau of Consumer Fin. Prot. v. Fifth Third Bank, N.A.*, Case No. 1:21-cv-262, 2023 WL 7325956, at *5 (S.D. Ohio Sept. 26, 2023).
[56] *Hensley Mfg. v. ProPride, Inc.*, 539 F.3d 603, 613 (6th Cir. 2009).